Case number 22-30, 11 et al. United States of America appellant v. Paul Michael Guertin. Mr. Lenners for the appellant cross-appellate. Mr. Peay for the appellate cross-appellate. Good morning, counsel. Mr. Lenners, please proceed when you're ready. Thank you, your honor. Good morning, and may it please the court. Dan Lenners of the United States. If I might request four minutes for rebuttal. The indictment in this case properly charged a scheme to defraud for the purpose of obtaining money or property. When faced with the decision whether to renew Guertin's top-secret security clearance, the State Department was faced with a concrete binary decision that went to an essential job qualification. If Guertin obtained a renewed security clearance, he would be employed in the future and would obtain those future salary payments. Were he not to obtain the renewed security clearance, he would lose his job. This case is just like those in which employers make the decision to hire someone, to give them a bonus, to give them a promotion, to enter into a contract. There is a discreet and predetermined decision that the State Department was faced with here. Guertin lied to secure that renewed top-secret security clearance and thus to obtain the future salary payments that would come with his employment in the future. The district court dared by, in this case, characterizing this as a mere salary maintenance theory of liability. This is not a case where an employee engaged in sort of routine day-to-day lives that go to ephemeral job characteristics such as productivity or wasting time on the internet. Instead, the need to have a top-secret security clearance was an essential job qualification. It was a binary decision whether to renew it or to deny that renewal. And were that renewal denied, Guertin would have eventually been fired. So in the situation of wasting time on the internet, which since you raised it, that's the hypothetical that's used at the ACE case, as you know. And the supposition on the Ninth Circuit is that if your theory is correct, then that person would be guilty of wire fraud because it would have violated, and we can definitely manufacture the specific rule if we construct the hypo in the right way, that bars the use of the internet for personal business on the work premises. And we can make that a binary requirement, too. And it's just an on-off switch, and somebody lies about that. And does your theory mean that that person has committed wire fraud with the obtaining, relating to the obtaining of a future salary stream, continuation of their current payments? I think the answer is yes, if I understand the hypothetical correctly, which is part of what's key here to the government's theory of wire fraud, is that there is a discrete decision that the State Department was faced with. That it was a binary decision whether to fire him or deny his security clearance or re-up it and allow him to be employed in the future. And that this was set in advance, that it was part of not just a general review of the employee's productivity, as in the Yates case, but instead was something that Gwert knew about. And in fact, he knew that if he would lose the security clearance, he would lose his job. And so the court need not decide sort of the broader issue as to whether any future salary would. But it seems to me that you're promising, you're basing a lot of your argument on the notion that this is a discrete binary condition. And I guess my question is, it seems like we could make basically everything in the workplace a discrete binary condition, as long as you have an employee manual that's given to you on day one that spells out, here's the various discrete binary things that you can or can't do. One of which, in a list of 500, is you can't use the internet at work for personal business. Just can't. And so everybody knows if they read the 500 discrete binary requirements that that's one of them. And I take it that if that is spelled out in the employee manual that you read on the first day you show up at work, that the violation of that can be the gravamen of a wire fraud prosecution. If the other elements of wire fraud are met, which I think also protect. Is there a reason not to think that those won't be met? Well, here the employee has to have an intent to defraud. So a specific intent to defraud the company has to, the lie has to be material. So material to obtaining those future salary payments, meaning material to keeping the employee's job. There has to be some sort of certification of, you know, it's a lie. There has to be a knowing and intentional lie. And so I think that... And why do any of those seem like much of a limiting principle? Because if the employer spells that out in the employee manual, presumably the employer thinks it's important. And let's just suppose the employer does. They check, you know, every month, just making sure that you haven't breached any of the 100 discrete binary preconditions that I itemized in your employee, in the employee manual I gave you, you showed up. And it turns out that there was a lie with respect to one of them. And of course the employee knows that if I lie, I could be fired because I've been told that when I got the employee manual. I'm not saying this necessarily means that your theory can't win, but I'm just wondering about the implications. Because in your briefing, you sought to distinguish the hypo in Yates about the person who is on the job and uses the internet for personal business. It just doesn't seem like that's really very much out of bounds to me because it seems like that can very much be in bounds as long as the employer does, you know, the thing that where they give the employee manual that shows that's a requirement they really care about. Well, I think as a practical matter that the requirement that the employer really cares about limits these situations. It would be unreal as a real matter of realism to list 100 binary items and check them every month. But also important to Your Honor's hypotheticals, it's not just that the employee knows he could be fired. To obtain, to have the specific intent to defraud, and for the lie to be material to obtain future salary payments, it has to be a higher standard. The employee has to know he's going to lose his job. Or certainly, Guertin met that here. No, it has to know that they could lose their job. You think the government has to show that they know that they would lose their job? It makes it harder to prove that the purpose of the lie was to obtain future salary payments if the person only knows they could lose their job. Because then it may not be material to the employer's decision. The defendant may be able to argue that the lie wasn't for purposes of obtaining salary they weren't otherwise entitled to. And so I'm not sure that the government has to prove it, but it certainly distinguishes this case from the hypothetical Your Honor has given. And I think some of these limiting principles go to the concerns for the honest services fraud and fraud for vagueness and sort of criminalizing common workplace misconduct. The top secret security clearance process is none of this. It is spelled out in advance. Guertin was well aware of it. Employees are warned that if they lie during the process, it's prosecutable as a crime. And it's an essential job qualification for a foreign service officer to maintain a top secret security clearance. And so even if there could be a broader theory of wire fraud that would be actionable, it seems like this much more narrow theory is actionable and the district court erred. How about a still narrower one? Because by narrower you mean a discrete binary condition that the employee knows about. That's what you mean? Yes. And how about a still narrower one, which is that it's a discrete binary condition that the employee knows about and that was also imposed as a condition of getting the job in the first place. So it wouldn't apply to things that only occur on the work premises, which could sweep in all kinds of stuff. That's dishonesty in some measure in the workplace, which is what the Supreme Court appeared concerned about in the scaling case. But it's the conditions that are imposed as a prerequisite to getting the job in the first place, which everybody agrees is a possible subject of a wire fraud prosecution that are then carried over and repeated when you're on the job also. That's certainly true here. That exists here. How to reconcile that with the plain language of the wire fraud statute is not something I've thought about. It fits in the contracting. It also fits in the contracting cases where a contractor has to certify, say, that they have sufficient disadvantaged business subcontractors and then has to recertify that throughout the course of the contract. One would think those should be treated identically because both are for the purposes of obtaining the future benefits of the contract or the future benefits of the employer. Sounds like maintaining. But I disagree that it's maintaining because each time... Once I have it, I know there are certain things I have to do to maintain. Because the employer has a choice to make that it doesn't have in the run-of-the-mill employee contract. It has a time to make it. It has this decision whether to renew the security clearance or not. And that is a pre-set decision that the employee knows about. And so in that case, this is sort of conceptually, I think, the same as obtaining the job in the first place, obtaining the promotion, obtaining the bonus, as opposed to just sort of staying employed while furthering away time. Mr. Linners, looking at the text of the wire fraud statute, the Supreme Court in Kelly said that although the first two parts are disjunctive, you need to read money or property into a scheme to defraud. But what about the word obtain? Do you have to read obtain also into the first disjunctive part of the wire fraud statute? Does Kelly require reading the word obtain into the first part? I certainly have assumed it does. And I have assumed that went back to McNally. I could be wrong. But the Supreme Court, as I understand McNally, even predating Kelly, said that the scheme to defraud that was not to get money or property is not properly chargeable. That's just services fraud. And looking back at the history of the fraud statutes and the common understanding of fraud, that the fraud had to be to get something, whether it be money or property. Getting, in some general sense, doesn't go to the distinction that's at issue in this case between maintaining and obtaining, arguably, because nothing turned on that distinction in either McNally or Kelly, perhaps. I mean, I think that's right that McNally and Kelly did not address the specific question at issue here. To the degree that the question is whether future salary is money or property, the Supreme Court said, I don't remember the name of the case, but it reads property broadly. And it should read money broadly as well, that there shouldn't be a limiting principle there. And so to the degree there's any question about whether these future salary payments are obtaining money, you would think that the Supreme Court would read that broadly. The narrowing principle meaning being that the scheme to defraud has to relate to money or property as opposed to some other thing. I'm not sure that the government can benefit from any distinction that I just drew here, because the indictment alleges it was obtaining money or property. But I was wondering if it the government's view that there can be a scheme to defraud for money or property that does not involve obtaining the money or property. Some other verb, perhaps. I'm not sure what that would be. I guess what I'm saying is that it's possible that under the first disjunctive part of the wire fraud statute, you could have a scheme to defraud for maintaining money or property. Maybe. I'm not sure under Kelly and McNally. I don't know the answer to that, Your Honor. Certainly, the Honest Services Fraud Statute 1346 means that the charged defendant doesn't have to obtain money or property. Generally, a bribery or kickback scheme is to obtain money or property, but you could imagine a person who is being bribed with something different, you know, services of sexual nature or something like that. And that is still a bribery scheme that would be chargeable under the wire fraud statute. I don't, I just, we focus much more narrowly on the fact that this scheme isn't just for maintaining anything. It is for obtaining. So, regardless of whether other verbs might fit, it comfortably fits within the meaning of obtaining because without a renewed upsecret security clearance, Burton is going to lose his job and his salary. We'll give you some time for rebuttal. Thank you. Thank you. Mr. Pede. May I please support Matthew Pede on behalf of Mr. Girt? As the Court's questions illuminated, there really is no limiting principle to the concrete binary claimed by the government other than the one suggested of something that has to be at the moment of hiring. I think what Yates points to is that when it talks about a specific performance metric, it's talking about something tied to compensation. I think that is a true limiting principle that ties misconduct or dishonesty to money or property under the wire fraud statute. If there's a performance metric tied to compensation, like a bonus, a raise, or a promotion, then the government has legs to stand on. But without that, you're left with simply nothing that's being obtained by that dishonesty, just maintaining an employment status. I have to say, I don't understand the supposed continental divide between obtaining and maintaining. It just seems to me to be entirely fine to say I'm maintaining my ability to obtain my future payments. It's both. You're maintaining the payments that you've gotten to date, but that's not to the entire exclusion of also saying I'm trying to obtain the future payments that I haven't yet gotten. Well, I would point the court to the language in McNally in the dissent. It talked about salary as something that is always there being offered to the employer, employee, that the employer is losing out on. And of course, that theory didn't carry the court. So there's a notion of salary inherent that's been discussed by the Supreme Court inherent in the context of the wire fraud statute. But it wasn't an issue in McNally because McNally wasn't honest. That was about whether you've been deprived of the honest services, not whether you've been deprived of a future stream of income. Correct, Your Honor. But the point of the dissent was the employer is not getting what the employer bargained for. Not getting what the employer is paying for. What they're paying is salary. And so I think that fact that salary is a concept in the context of wire fraud means there is a distinction between obtaining a position, which comes with a salary, and maintaining that position. Because the salary has been obtained. The salary is going to continue to flow. It hasn't. What's been obtained, you don't have an entitlement, contractual or otherwise, to the future payments. I mean, you can manufacture a situation in which you do. But as a general matter, you might have an expectation that as long as I'm not fired, I'm going to continue to get the same payments that I've gotten every, let's just say it's monthly. Make it easy. I'm going to continue to get the same payment in future months as I've in past months, as long as I don't get fired. But the employer, why can't the employer just construct the terms of employment like they generally are and like they presumably were here to say, here's your salary and you'll continue to get that payment at the beginning of every month unless the following things happen. So you shouldn't assume that you're entitled to the future payments. You only get the future payments if the following things happen, including that you continue to have a security clearance. And then you have no expectation that you're going to get the future one. You always have to keep maintaining your security clearance so that you can obtain the future payments. Well, as the district court pointed out, there's a kind of construction committed to that, but it is somewhat torture. And so, of course, the court looked through precedent to understand the language and the court looked through the dictionary to understand the term. And then the applying all three of those, the context of the Supreme Court cases, the dictionary definition of obtain versus maintain, and the rule of lenity, I think council, I think the court was right to counsel against that kind of. Just putting aside lenity for one second and just focusing on dictionary definitions, I don't know that I understand what's definitionally difficult about this. If the terms of employment are that you're not entitled to next month's salary unless you have a good security clearance, you're just not entitled to it. You're told that from the very first day you show up at work. Yes, you can expect that you'll continue to get these payments, but you're not entitled to a future payment unless you maintain your security clearance in good standing. And then it seems totally natural in the English language to say, I'm hoping that I can obtain my next salary payment. And as long as I have a good security clearance, I will be able to obtain it. But if I don't, I won't. Well, I think the difference here is that the employee is doing work for those salary payments. And so it's not just the employer setting the terms and saying, you got to do all this. The employee is doing the work that entitles them to the salary payments before the work performed. And the employer can say, well, these are my conditions, but the employee has done the work. And so the question, is it fraud? Is it obtaining that money or property by fraud when the employee is doing the work? And I think obtaining position is a moment of bargaining. And it may or may not be essential to the bargain, the dishonest statement that the employee made to get the position. No, but it's doing the work with a security clearance. It's like having to come to a job with a certain uniform. It's not enough of a response to say, well, I brought the hammer. I don't have to wear all that other stuff. You're not doing the work the way the employer wants it done. That is with security clearance. And if you come to work without a security clearance, it seems a shallow argument to say, well, I'm prepared to do everything else you wanted me to do. Well, Mr. Hurd always has security clearance when he did the work. And so this alleged scheme is that he was lying to keep his security clearance so that he could keep his job, but he couldn't do his job. So that after doing his job, he would get his salary payments for that job. But he shouldn't have had a security clearance. That's the, that's the employer. That's what Bob Barton's about. Right. But it, the alleged misrepresentations are about the 2016 clearance process, which never completed. The allegations and the indictment, it's beyond any statute of limitations, anything happened in 2010, and it's an allegation he got security clearance improperly. So we're talking about someone who obtained a position and then started working in that position with a security clearance. Suppose, yeah, suppose you have to maintain good standing in the bar. Let's just shift to that. And then what the employee does, and let's just assume it's an employee-employee, employee-employee-employee relationship. And what the employee does is lie about whether they've maintained good standing because they aren't in good standing. And they do that just so they can continue to collect the payments. Under your theory, that would not be where you are. Correct. So in that one, it's, it's actually already happened. You're just not in good standing anymore. But you just lie about it. And you have a position and you lie to keep the position. Right. Yeah. Yeah. I think in that situation, you're lying to maintain something you've already obtained. And you didn't obtain it with a lie, but you have it. Now you're lying to maintain it. It's a very fine distinction, but it's one that, you know, you're lying to obtain future payments to which you're not entitled unless you're in good standing. Because if you're not in good standing, you can't obtain those future. I think it would depend on the nature of the payments and the nature of the job, whether it is something that is more akin to promotion or to a new contract, or whether it's more akin to a contract you already have. You know, you may start building a house that you obtained the contract to build the house when you had your license and you get it two-thirds of the way through, you lose your construction license, but you finish the house. And so the question is, did you obtain anything or maintain it? Mr. P, does this, does your argument in part turn on the nature of being a foreign service agent, you know, being part of the civil service where you're not exactly an employee at will? Does that matter? It does matter. I'm glad, you brought that up because there's, there's an important issue that unfortunately doesn't help the court with the very academic question of maintain versus obtain, but I think it's very important to disclose in this case. It is not true that we had conceded that Mr. Burton would have lost his job after he lost his parents, or more specifically lost his access to his salary stream. The indictment is somewhat inconsistent with itself because it does have a line saying security clearance with a condition of employment, but it refers to the FAM regulation. And I would point the court to FAM regulation 12, FAM 236-2, which is in the statutory appendix. What it states is losing your security clearance does not mean you lose your job or your salary stream because you're a civil servant. There's lots of protection. Obviously, there's a whole adjudicated process of whether you keep your clearance or not. That's not what I'm saying. I'm saying at the end of that process, even if you lose your clearance, it's a discretionary determination by the secretary, whether there's some other position in which you could maintain that salary without affecting national security. For Mr. Burton, there was, he'd already been offered that position. And so the whole, the government's entire theory of a concrete binary choice that metric, that without which you cannot get that salary stream does not apply. So the government can't terminate the employment of somebody who lies on their security clearance application to make, to re-up their security clearance, to maintain their security clearance? Well, whether they can terminate them for lying, of course they can terminate them for lying. And they can, they can terminate them or they can't terminate them for not having the security clearance anymore. Correct. At all. Well, it's not that they have, it's not that, I mean, is the question whether it necessarily follows that they're terminated or is the question whether the government has any ability to terminate them at all? Under the government's articulation of the limiting principle, it has to be the case that this is a requirement without which you will lose your job and your access to salary stream. I guess, why can't it just be a requirement without which you might lose your job? And that's why you try to show that you still satisfy the requirement because you know you might lose your job. Now it doesn't have to be that you'll automatically lose your job. It's just that you do it because you know that there's a reasonable likelihood. Does that not work? I think it doesn't work for the reasons that we're coming to the court with from McNally and everything else that has forced the government into a position of articulating a standard to avoid saying any workplace dishonesty is actionable as wire fraud, which they recognize as serious due process concerns recognized by the Supreme Court. The government has said, okay, it has to be a binary concrete metric that you would not have gotten a job without it, and you will lose the job. Is that also true at the moment you get the job so that the lack of a security clearance, does that automatically mean you can't get the job to begin with? Or does it just mean that that's a reason that the government can choose not to hire you? You cannot get the job without a security clearance. And that is, again, another reason that obtaining and maintaining are different. You cannot get the job without a clearance, but once you have it, you have a whole set of new rights because now you're an employee. And those rights include the due process of keeping your security clearance or not. And then even if it's taken away, the right to have a job unless the secretary determines that you are at national security risk and decides to fire you. So it's discretionary, and it's based on that particular determination. So even in the regulations, there's a difference between an applicant and an employee, and the government's theory depends on there being no between applicant and employee. But your theory also would still apply even if there were no difference, right? Because your distinction between maintaining and obtaining would definitely cover the situation in which the very same thing is both a condition of obtaining the job to begin with and a condition of avoiding being fired. Yes. And it has to be related to the bargain. I think there's about eight different pegs that I would argue we can win on. The I would maintain if the transportation is not essential to the bargain, it doesn't necessarily fall as a wire. You know, you have the case of someone being lured into a bar to buy more expensive drinks. The luring itself didn't go to the bargain of the drink. I think it's a close call whether someone has to be a citizen to obtain a position, and they lie about that. It has nothing to do with the job requirement. Is that broad or is it just fireable and actionable under other statutes? But putting that aside, I do agree that my theory would work or my explanation would work if it is. How much work, Mr. Pede, does the rule of lenity have to do here in your view? In my view, it doesn't have to do very much work because first you look at the dictionary definitions of obtain and maintain as the district court did. And then you look at the context of Supreme Court decisions, which actually discuss in a relevant context in a way that anyone coming to the statute would understand what is prohibited or not in the same way as the dictionary. But I think if you can still get past those, the rule of lenity does play a role here. Because we're looking at the stretching of the criminal law in a context in which there's nothing that someone looking at it would know the way that it's going to be applied. So you can get to some work, but it's obviously the last resort. I don't think it's that. If we thought the distinction between obtaining and maintaining is hard to really hang our hats on, then can the rule of lenity caution favor affirmance here? Absolutely. I mean, given this criminal statute, criminal statutes are always construed strictly. I do think it does enough work here to have some favor. You wouldn't have as much uncertainty if the government's ability to carry out prosecution in a case like this would only be seen from our opinion in this case to apply in a situation in which it's the same condition that was in place both as a prerequisite to obtaining the job to begin with and as the condition of keeping the job. I think that is a useful limiting principle. But I think especially here where there is a distinction between an applicant and an employee, the regulations treat them differently. You have new rights as an employee, and that means that maintaining is still different. My time is up. Okay, thank you, Mr. Pete. Thank you. Mr. Lyons, we'll give you three minutes for rebuttal. Thank you, Your Honor. There's just two points I'd like to briefly address. The first is certainty with which Guertin would be fired were he to lose his security clearance. That certainty is relevant to his intent to defraud and the materiality of his laws. So the intent to defraud has to be an attempt to obtain money or property he doesn't have. So he has to think he will be fired, and there's good reason to think he'll be fired, because there is a presumption that a person who loses their security clearance will lose their job at the State Department unless the secretary in his or her discretion finds that another employment position is suitable. And so it doesn't ultimately matter if, as a matter of fact, he will be fired. It's whether he had the intent to defraud, meaning he thought he would be fired, and thus that's what drove his lies. As to the questions about the distinction between maintain and obtain and the work that the word obtain is doing, I think the, you know, the clear statement from the Supreme Court on this is in McNally at page 358, where the court said that to defraud commonly refers to wronging one in his property rights by dishonest methods or schemes and usually signify the deprivation of something of value by trick, deceit, chicane, or overreach. They said the codification does not indicate that Congress was departing from this common understanding. Adding the second phrase, meaning obtain money or property, simply made it unmistakable that the statute reached false promises and misrepresentations as to the future, as well as other frauds involving money or property. And although not entirely clear, saying that obtain money or property is simply a way of getting frauds that go to the future would seem to cover this circumstance exactly, which is Wharton's fraud went to obtaining his future. I was just asking one question on the Ninth Circuit's opinion in Yates. So as I understand it, your position is that we wouldn't have to disagree with Yates because this case involves a specific performance metric, using the language of Yates. And Yates did not. And I guess the sentence in which that appears says, we agree that if an employer offers a raise or bonus tied to some specific performance metric, an employee who lies about having achieved that metric has deprived the employer of something of value. And I take it that the use of raise or bonus was an advertent one because that is receiving before. So from that standpoint, the fact that this case under your approach involves a specific performance metric wouldn't be enough to distinguish Yates. I'm not sure if that's right. Yates dealt with bank employees who lied to the board of directors about the bank's performance to keep their jobs, their standard salary, and their standard end-of-year bonuses. And so it's not clear to me that Yates would have come out the same way had there been a specific performance metric that the employees were lying about to obtain those future salary payments and those bonuses. So I don't know that Yates itself is clear as to whether it would come out differently if there was a specific performance metric, as opposed to generalize about the bank's financial condition. But the only sentence I think in Yates that uses specific performance metric, which is the language that you understandably latch onto, is one that ties it to a raise or a bonus. And it's just pretty stark that the formulation involves a raise or a bonus, given that a raise or a bonus would actually satisfy the opposing side's argument too, because that's something different from what was being received. That's true, Your Honor. And if the court wants to say we disagree with Yates and Yates was wrongly decided, the government would agree with that. Right. But I don't think the court has to. All right. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Mr. Pede, you're appointed by the court to represent the appealee in this matter, and the court thanks you for your assistance.
judges: Srinivasan, Rao, Edwards